UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| ERROL CHOUEST, JR. | * | C.A. NO. 08-4809 |
|  | * |  |
|  | * | SECTION "B" |
| VERSUS | * | JUDGE IVAN L. R. LEMELLE |
|  | * |  |
| OFFSHORE MARINE, L.L.C. | * | MAGISTRATE (2) |
|  | * | MAG. JUDGE JOSEPH C. WILKINSON, JR. |
|  | * |  |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF OFFSHORE MARINE, L.L.C.
MOTION FOR SUMMARY JUDGMENT
REGARDING SUPERIOR'S COUNTER-CLAIM AND THIRD-PARTY DEMAND**

**MAY IT PLEASE THE COURT:**

Offshore Marine, LLC ("Offshore Marine") moves this Honorable Court for Summary Judgment, dismissing Superior Shipyard and Fabrication's ("Superior's") counter-claim against Offshore Marine and third-party demand against Jeff Dorsey.  Offshore Marine and plaintiff, Errol Chouest, Jr. ("Mr. Chouest") assert that Superior's negligence caused Mr. Chouest's alleged accident.  Superior seeks defense and indemnity from Offshore Marine and its principal, Jeff Dorsey, based on what Superior contends is an indemnity agreement contained in a work order signed by Offshore Marine.  Under longstanding Fifth Circuit precedent, Superior's purported indemnity language is wholly inadequate to meet the strict standard that would require Offshore Marine to indemnify Superior for Superior's own negligence.  In any event, the text of the indemnity language only requires Offshore Marine to defend and indemnify Superior when one of Offshore Marine's employees or subcontractors is injured.  Mr. Chouest, as Superior concedes, was not an Offshore Marine employee or subcontractor.  Accordingly, Offshore Marine moves for Summary Judgment.

**I.  BACKGROUND FACTS**

On October 26, 2007, the M/V HANNAH "B," a vessel owned by Offshore Marine, LLC, was turned over to Superior Shipyard for repairs.  Mr. Chouest, an independent contractor under the direction of Superior, claims he was injured while, lifting a plate in the engine room of the HANNAH "B," he slipped on wet Enrust (a paint-like substance) and hurt his back.  Mr. Chouest filed a claim in this court against Offshore Marine as the vessel owner.  When Offshore Marine learned that Mr. Chouest was an independent contractor of Superior, not an employee, Offshore Marine added Superior Shipyard as a third-party defendant, alleging that if any party was responsible for plaintiff's alleged accident, it was Superior—that is, that Superior's own negligence caused plaintiff's alleged accident.  Mr. Chouest then added Superior as a direct defendant, also alleging that Superior's negligence caused plaintiff's accident.  By seeking defense and indemnity in this case, Superior is seeking defense and indemnity for Superior's own negligence.

According to Superior, on October 26, 2007, Jeff Dorsey, the principal of Offshore Marine, signed a Work Order prior to Superior commencing work on the M/V HANNAH "B."[1]  The Work Order contains a four paragraph Red Letter Clause ("RLC"), the last paragraph of which, Superior contends, is an indemnity agreement.  The last paragraph of the Red Letter Clause, in inconspicuous text, provides as follows:

> Employees other than shipyard workers shall not perform maintenance or other work on vessels in the shipyard without written consent.  In any event, should such work be performed, owner and operator agree to defend, indemnify and hold harmless the shipyard and its affiliated companies and insurers from any claims or suits for personal injuries to any employees or third persons and from property damage arising out of or to any degree caused by work performed in the yard by owner's employees and owner's contractors (other than shipyard).[2]

---

[1]  See Work Order, attached hereto as Exhibit "A."
[2]  See *Id.*

Superior claims the Work Order attached to this Motion is identical to the Work Order signed by Jeff Dorsey, with the exception of one caveat: Superior claims the "DESCRIPTION OF WORK" on the Work Order was blank when signed.[3] According to Superior, the shipyard required that the Work Order be signed before work is begun on a vessel;[4] however, it is unclear Jeff Dorsey was ever informed that the Work Order was meant to encompass all the work performed on the M/V HANNAH "B."[5] Superior drafted the contractual language at issue. Superior has used this RLC indemnity language for approximately fifteen years,[6] basing its language on a similar form used by Bollinger Shipyard, provided by an "attorney friend" of Superior.[7]

## II. CHOICE OF LAW AND STANDARD OF REVIEW

### A. Choice of Law

The contract at issue is a vessel repair contract. Federal maritime law applies to vessel repair contracts.[8] However, state law is applicable to maritime contracts so long as it does not conflict with maritime principles.[9] In interpreting maritime indemnity contracts, courts have noted that there is no distinction between Louisiana law and federal maritime law.[10]

---

[3] See corporate deposition of Superior Shipyard through its representative, Brent Duet, attached hereto *in globo* as Exhibit "B," p. 72 ln. 10-19.

[4] See *Id.* p. 63 ln. 19-21.

[5] See *Id.* p. 76, ln. 15 – p. 77, ln. 1. Mr. Duet testified that he did not know the circumstances of how the work order was given to Mr. Dorsey.

[6] See *Id.* p. 74, ln. 21-23.

[7] See *Id.*, p. 74, ln. 21 – p. 75, ln. 6.
Q: Do you remember who drafted [the RLC]?
A: I can't remember the person's name, but it was based on the same form that Bollinger Shipyard uses. He was doing work for Bollinger at the time.
Q: Was it an attorney or –
A: Attorney, yes, an attorney friend of mine.

[8] See *Kossick v. United Fruit Co.*, 365 U.S. 731, (1961), *Ham Marine, Inc., v. Dresser Indus., Inc.*, 72 F.3d 454, 459 (5th Cir. 1995).

[9] See *Ham Marine, Inc., v. Dresser Indus., Inc.*, 72 F.3d 454, 459 (5th Cir. 1995).

[10] See *Foreman v. Exxon Corp.*, 770 F.2d 490 (5th Cir. 1985).

**B.** **Standard of Review**

    **1.** **Motion for Summary Judgment**

A motion for summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that no genuine issue as to any material fact exists and that the moving party is entitled to a judgment as a matter of law.[11] Pursuant Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions (of the record) which it believes demonstrates the absence of genuine issues of material fact."[12]

The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the non-movant's case.[13] In so demonstrating, the movant may rely on the absence of evidence to support essential elements of the opposing party's claim.[14] Moreover, if the record taken as a whole cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.[15] The moving party need not submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case.[16] Once a proper motion for summary judgment has been made, the non-moving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.[17]

---

[11] Fed. R. Civ. Proc. 56(c).
[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871 (1990).
[13] *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2002).
[14] *Int'l Assoc. of Machinists and Aerospace Workers AFL-CIO, Lodge No. 2504 v. Intercontinental Mfg. Co., Inc.*, 812 F.2d 219, 222 (5th Cir. 1987) citing *Fontenot v. UpJohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).
[15] *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1286 (5th Cir. 1990).
[16] *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991).
[17] *Celotex*, 477 U.S. at 324.

## 2. Interpretation of The RLC

### a. Indemnity Contracts for One's Own Negligence Are Strictly Construed

Under both maritime and Louisiana law, an indemnity contract "should be read as a whole and its word given their plain meaning unless the provision is ambiguous."[18] However, an indemnity contract that provides for indemnification of one's own negligence must be strictly construed against the party seeking indemnity.[19] For an indemnity contract to include indemnification for one's own negligence, the clause must be unambiguous and clearly state such an intent in express and unequivocal terms.[20] ""While it need not be done in any particular language or form, unless the intention is unequivocally expressed in the plainest of words, the law will consider that the parties did not undertake to indemnify one against the consequences of his own negligence."[21]

### b. Ambiguity in a Contract is Construed Against the Drafter

Whether a contract is ambiguous is a question of law.[22] If the clause is ambiguous as to whether it includes the indemnitee's own negligence, then the clause should be interpreted against the indemnitee.[23] Under both admiralty law and Louisiana Law, contracts must be construed against the party that drafted the contract.[24] The long-established rule of construction

---

[18] *Id.* (citing *Lirette v. Popich Bros. Water Transport, Inc.,* 699 F.2d 725, 728 (5th Cir.1983) (applying federal maritime law); *Ogea v. Loffland Bros. Co.,* 622 F.2d 186, 189 (5th Cir.1980) (applying Louisiana law)); (The court noted that the interpretation of indemnity contracts under maritime law was the same as the interpretation of indemnity contracts under Louisiana law.)

[19] *Moore v. Kenilworth/Kailas Prop.*, 978 So.2d 475, 480 (La.App. 4th Cir. 2008).

[20] See *Rivers v. Schlumberger Well Surveying Corp.*, 389 So.2d 807 (La.App. 1980), *Moore v. Kenilworth/Kailas Prop.*, 978 So.2d at 480, *Steward v. Winn Dixie Louisiana, Inc.*, 686 So.2d 907, 919 (La.App. 5th Cir. 1996), *Rodrigue v. Legros*, 552 So.2d 703 (La.App. 3d Cir. 1989).

[21] *Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge et al.*, 424 F.2d 684 (5th Cir. 1970).

[22] *Barnard Constr. Co. v. City of Lubbock,* 457 F.3d 425, 428 (5th Cir. 2006).

[23] *Steward*, 686 So.2d at 919 (The court held that general language should not be read to include the "extraordinary and harsh obligation to indemnify the indemnitee for damages occasioned by the sole negligence of the latter."), *Adams v. Falcon Equip. Corp.*, 717 So.2d 282, 287 (La.App. 2d Cir. 1989).

[24] See LSA-C.C. Art. 2056, *Smith v. American Family Life Assur. Co. of Columbus*, 584 F.3d 212 (5th Cir. 2009), *Edward Leasing Corp. v. Uhlig & Associates, Inc.,* 785 F.2d 877 (11th Cir.1986).

for maritime contracts is to "construe the contract language most strongly against the drafter."[25] Furthermore, contracts that are provided on a standard from contract must be interpreted against the party that provided the standard form.[26] Since Superior provided the work order containing the RLC, the terms of the RLC are construed against Superior.

### III. LAW AND ARGUMENT

**1. The Indemnity Clause Does Not Require Offshore Marine to Indemnify Superior for Superior's Own Negligence**

In the event the work order is a valid and enforceable contract, binding against Offshore Marine and/or Jeff Dorsey (which it is not), Superior is not entitled to defense and indemnity. The pertinent contractual language requires "Owner . . . to defend, indemnify and hold harmless [Superior] from any claims or suits . . . "arising out of or to any degree caused by work performed in the yard by owner's employees and owner's contractors." The indemnity language is not adequate, as a matter of law, to require Offshore, the indemnitor, to provide defense and indemnity to Superior, the indemnitee, for Superior's own fault.

Under maritime law, unless there is some mention of the indemnitee's fault or negligence somewhere in the indemnity agreement, the indemnitee is not entitled to defense and indemnity for its own negligence. Contracts purporting to require indemnity "any and all" or "to any degree caused by" or "arising out of or being incident to" the actions of the indemnitor are simply not enough.[27] This is what the Superior RLC claims to require, so the Superior RLC fails.

Nor is this a close question. In all the following cases, the Fifth Circuit has concluded the following language does not require indemnity for a party's own negligence:

---

[25] *Edward Leasing Corp. v. Uhlig & Associates, Inc.*, 785 F.2d 877 (11th Cir.1986) (citing *United States v. Seckinger*, 397 U.S. 203, 210-211 (1970).
[26] *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 957 (5th Cir. 2009).
[27] See e.g. *Transcontinental Gas*, 424 F.2d 684 (indemnity "from damages and liabilities of every kind arising out of or being incident to the operations of [indemnitor] hereunder." was inadequate to require indemnity).

1. [Indemnitor] assumes entire responsibility and liability for losses, expenses, demands and claims in connection with or arising out of any injury, or alleged injury (including death) to any person, or damage, or alleged damage, to property of [indemnitee] or others sustained or alleged to have been sustained *in connection with or to have arisen out of or resulting from* the performance of the work by the Subcontractor, his subcontractors, agents, servants and employees, including losses, expenses or damages sustained by [indemnitee], and agrees to indemnify and hold harmless [indemnitee], his agents, servants, and employees from any and all such losses, expenses, damages and claims, and agrees to defend any suit or action brought against them, or any of them, based on any such alleged injury or damage, and to pay all damages, costs and expenses, including attorneys' fees, in connection therewith or resulting therefrom."[28]

2. "[Indemnitor] agrees to indemnify [indemnitee] for any claim, loss, liability, etc. . . . *occasioned by acts or omissions, whether or not negligent, of* [indemnitor's] officers, employees, agents or subcontractors."[29]

3. [Indemnitor] shall indemnify and save [indemnitee] harmless from and against any and all loss, damage, injury, liability, and claims thereof for injuries . . . *resulting directly or indirectly* from [Indemnitor's] performance of this contract.[30]

4. [Indemnitor] agrees to defend and hold [indemnitee] indemnified and harmless from any loss, expense, claim or demand for: (a) Injury to or death of [Indemnitor's] employees or for damage to or loss of [indemnitor's] property *in any way arising out of or connected with* the performance by Contractor of services hereunder. . . .[31]

5. [Indemnitor] hereby agrees to indemnify and hold harmless [indemnitee] against all claims . . . as well as against any and all claims for damages,

---

[28] *Batson-Cook Co. v. Industrial Steel Erectors*, 257 F.2d 410 (5th Cir. 1958) (emphasis added.).

[29] *Gorsalitz v. Olin Mathieson Chemical Corp.*, 429 F.2d 1033, 1049 (5th Cir. 1970) (Louisiana law; emphasis added.)

[30] *Cole v. Chevron Chemical Co.-Oronite Division*, 477 F.2d 361 (5th Cir. 1973) (Rev'd on other grounds) ("Louisiana law is clearly to the effect that the failure of the parties to refer expressly to "negligence" in an indemnity contract is evidence of the parties intention not to provide indemnification for the indemnitee's negligent acts. The parties' clear and unequivocal intent to indemnify against damages caused solely by the indemnitee's own negligence must be expressly articulated by specific reference to 'negligence.' Otherwise, the presumption is that the indemnification is applicable only to vicarious responsibility of the indemnitee resulting from negligent acts of the indemnitor.") (internal citations omitted; emphasis added.)

[31] *Smith v. Chevron Oil Co.*, 517 F.2d 1154, 1156 (1975) (Louisiana law) ("Chevron's counsel conceded, and the Court recognized, that "the indemnity agreement between Chevron and Ocean Sciences unquestionably does not provide for indemnification for the indemnitee's own negligence in the clear and specific language required by Louisiana law.") (internal citations omitted). The Court further concluded that there was no duty of defense separable from the duty of indemnity. (internal citations omitted; emphasis added.)

> whether to person or property, and howsoever *arising in any way directly or indirectly connected* with the possession, navigation, management, and operation of the vessel.[32]

In *Batson-Cook Co.*, number one above, the Court noted that the contract "does not contain the talismanic words 'even though caused, occasioned or contributed to by the negligence, sole or concurrent' of the Indemnitee, or like expressions." Accordingly, the Court reasoned, "the broad, all-inclusiveness of language used is itself one of the indicia which the law regards as insufficient. The purpose to impose this extraordinary liability on the Indemnitor must be spelled out in unmistakable terms. It cannot come from reading into the general words used the fullest meaning which lexicography would permit.

In *Lanasse*, example four, the Fifth Circuit explained: "the purpose to impose this extraordinary liability must be spelled out in unmistakable terms. It cannot come from reading into the general words used the fullest meaning which lexicography would permit. . . . The lack of concreteness and specificity cannot be cured at this late date by the unilateral contention of one party that it meant to impose unlimited liability on the other side."[33]

In contrast, in cases where there is an express requirement of indemnity for the indemnitee's own negligence, indemnity for the indemnitee's own negligence can be proper.[34] This includes clauses such as "without limit and without regard to the cause or causes thereof or the negligence of any party or parties";[35] "regardless of whose fault caused the injury";[36]

---

[32] *Lanasse v. Travelers Ins. Co.*, 450 F.2d 580, 583 (5th Cir. 1971) (maritime law; emphasis in original.)

[33] *Id*, citing Batson-Cook Co. v. Industrial Steel Erectors, 257 F.2d 410, 413 (5th Cir. 1958). (Applying Alabama law but cited with approval in Louisiana. See e.g. *Despaux v. California Co.*, 286 F.Supp.558 (E.D.La. 1968).

[34] See e.g. *Marquette Transp. Co., Inc. v. Louisiana Machinery Co., Inc.*, 367 F.3d 398 (5th Cir. 2004) (the indemnity contract had the phrase "including the negligence or other legal fault of each party's indemnitees." *Dupre v. Penrod Drilling Corp.*, 993 F.2d 474, 478-79 (5th Cir. 1993) (Texas law.)

[35] *Id.*; see also *Theriot v. Bay Drilling Corp.*, 783 F.2d 527 (5th Cir. 1986) (same language under Louisiana law.)

[36] *Blanks v. Murco Drilling Corp.*, 766 F.2d 891, 894 (5th Cir.1985).

"whether caused by [indemnitee's] negligence or otherwise";[37] or "regardless of whether or not it is caused in part by a party indemnified hereunder."[38] However, the language "including without limitation and irrespective of negligence"[39] has been held to be ambiguous under Texas law, which requires less specificity than Louisiana or maritime law.[40]

Regardless of the borders of what constitutes adequate specificity for a party to obtain indemnity for its own negligence, this case is not close. Superior's language, "arising out of or to any degree caused by," is inadequate, as a matter of law, to require Offshore Marine to indemnify Superior for Superior's negligence. Superior is seeking indemnity for its own negligence, but the work order containing the RLC is woefully insufficient for this purpose.

**2.    The RLC only requires indemnity for suits by employees and third parties, not Shipyard Workers like Mr. Chouest.**

Even if this Court found Superior's language required indemnity for Superior's own negligence, the RLC does not require indemnity in a suit brought by Mr. Chouest, a shipyard worker. The RLC only applies if an employee or third party, within the meaning of the RLC, files suit against Superior. The RLC states:

> ***Employees* other than shipyard workers** shall not perform maintenance or other work on vessels in the shipyard without written consent. In any event, should such work be performed, owner and operator agree to defend, indemnify and hold harmless the shipyard and its affiliated companies and insurers from any claims or suits for personal injuries to **any employees or third persons** and from property damage arising out of or to any degree caused by work performed in the yard by **owner's employees and owner's contractors** (other than shipyard).[41]

---

[37]   *Polozola v. Garlock, Inc.*, 343 So.2d 1000, 1003 (La. 1977).
[38]   *Berry v. Orleans Parish School Board*, 830 So.2d 283, 284-287 (La.2002).
[39]   *Chevron Oil Co. v. E. D. Walton Const. Co., Inc.*, 517 F.2d 1119, 1121 (5th Cir. 1975).
[40]   *Id.* ("Although Texas has not formally adopted the rule that an indemnitee is protected against his own negligence only if the contract language expressly states that the contract covers the negligence of the indemnitee, the decisions of Texas courts indicate an increasingly stricter application of the clear and unequivocal rule and have progressed toward the so-called 'express negligence' rule as near as judicially possible without adopting it.") (internal citations omitted.)
[41]   See *Id.*

The first sentence of the fourth paragraph of the RLC contemplates two different categories: employees on the one hand, and shipyard workers on the other. As the President, part-owner, and corporate deponent of Superior admits, Mr. Chouest is a shipyard worker.[42] Employees are altogether different.

Looking at nothing more than the first sentence of the fourth paragraph of the RLC, "Employees" would appear to be, literally, employees of the vessel. However, read in the context of the whole RLC, the definition of "employees" may not be so narrow. The second time the RLC uses "employees," it includes a more expansive term: "employees or third persons." The third time the RLC uses "employees," it again clarifies the meaning: "owner's employees or owner's contractors." Reading the RLC broadly for purposes of Summary Judgment, "employees" has a specific meaning: people—whether employees, third-parties, or contractors—brought to the vessel by the vessel owner. This is exactly as Mr. Duet explained in Superior's corporate deposition: "employees" means anyone brought to the shipyard by the vessel owner, not just limited the people who were literally Offshore Marine employees.[43] "Employees," however, are emphatically not shipyard workers like Mr. Chouest, who was brought to the shipyard by Superior.

---

[42] Deposition of Brent Duet, Exhibit B, p. 92, ln. 9 – 13; p. 93, ln. 2-11.
  Q. Who do the shipyard workers encompass?
  A. Shipyard workers are people that are approved to work at my yard and -- either as employees or contractors.
  • • •
  Q: So Mr. Chouest would be a shipyard worker?
  A. Yes.
  Q. Which makes sense, because it wouldn't make sense to get Offshore's written approval for Mr. Chouest to be working on the HANNAH B; right?
  A. No. It wouldn't -- Mr. Chouest would not have to get approval from Offshore to work like on that day on that job.

[43] See *Id.*, p. 95-98. p. 97, ln. 10-16:
  Q: So employees, according to Superior, is anybody being paid by Offshore directly, not as in Offshore pays Superior, and then Superior pays its people?
  A: I look at it as approved by Offshore to perform work on that boat. I consider them employees."

Assuming the RLC applies, it only applies if an "employee or third persons"—someone brought to the vessel by the vessel owner—files suit. Mr. Chouest is not an "employee or third person" within the meaning of the clause. He is, by Superior's own admission, a shipyard worker, paid by Superior. Accordingly, the indemnity clause does not apply.

Offshore anticipates that Superior will argue Chouest was a third person, making indemnity proper. He is not. As described above, "third persons" is a clarification of "employees," broadening the term to include anyone the vessel owner brings to the shipyard. Offshore Marine did not bring Mr. Chouest to the shipyard. Moreover, Superior—and therefore, shipyard workers—cannot be considered *third* persons because Superior itself is a *first* person to the RLC. This fits with the interpretation of the RLC as a congruent whole. Superior uses a specific term for people it brings to the shipyard: "shipyard workers." Omitting this term after "employees" cannot be construed as accidental. The RLC could require defense and indemnity for any claims for personal injuries to **employees or shipyard workers**. That it fails to do so is telling.

Keeping in mind the rule that indemnity contracts are construed narrowly and that contracts are construed against the drafter (here, Superior), Superior cannot claim defense and indemnity for a personal injury to Mr. Chouest. The clause, if it applies at all, would only apply if one of Offshore Marine's personnel or one of Offshore Marine's contractors had filed suit against Superior. Mr. Chouest, a shipyard worker, is not under the ambit of "third persons."

This is not only the textually sensible interpretation, it is the appropriate interpretation under the facts. Insofar as a vessel owner knows, "shipyard workers" are Longshoremen who cannot sue Superior. Offshore Marine has no way to know that Superior and some welders/fitters, like Mr. Chouest, have chosen to enter into independent contractor agreements and have rights in tort against Superior. Therefore Offshore Marine has no reason to expect it

could be ambushed by an indemnity demand from Superior for the claims of a shipyard worker such as Mr. Chouest.

### IV. CONCLUSION

Described above, the RLC does not apply and does not entitle Superior to defense and indemnity from Offshore Marine. However, the foregoing is not an exhaustive list of the problems with the RLC as an indemnity contract. The clause is not adequately conspicuous.[44] It may not apply to Offshore Marine (given that it was addressed to Fish Offshore). The clause only applies when there is no "written consent," but Superior testified in its deposition that it waived the written consent requirement in this circumstance by verbally approving of Offshore bringing people to the M/V HANNAH "B."[45] Moreover, there are fundamental problems with Superior's contention that Offshore Marine was ever on notice that a blank work order and its claimed indemnity contract were meant to encompass the entirety of the time the M/V HANNAH "B" was at Superior Shipyard.[46]

However, for purposes of Summary Judgment, this Court need go no further than the language of the RLC. Superior's choice of language is inadequate, as a matter of law, to

---

[44] See *ORDUNA SA v. Zen-Noh Grain Corp.*, 913 F. 2d 1149, 1153 (5th Cir. 1990) ("Thus the berth application did not identify by either date or number the specific dock tariff that purported to exculpate Zen-Noh from its own negligence.. To be enforceable, clauses exempting one from one's own negligence must be "specific and *conspicuous.*" emphasis in original) (citing Restatement (Second) of Contracts § 195, comment b (1981).

[45] See Deposition of Brent Duet, Exhibit "B," p. 103-106.
   Q: When the sentence says: "Employees other than shipyard workers shall not perform work or maintenance in the shipyard without written consent" what does Superior mean by "without written consent"?
   A.   I consider it as without a request to perform -- to do that. To bring people in, from their company, or their source, to perform work on, say, that vessel on that job.
   Q.   So that would be like Mr. Dorsey requesting to you that he can bring people on to the boat?
   A.   Yes.
(p. 103, ln. 1-14)
   Q.   Why didn't you require Mr. Dorsey to give you written consent?
   A.   Because I decided to verbally agree with it.
(p. 105, ln. 24 – p. 106, ln. 2.)

[46] See e.g. *Freeman v. Witco Corp.*, 108 F.Supp.2d 643 (E.D. La. 2000).

require indemnity for Superior's own negligence. Assuming *arguendo* the RLC did encompass Superior's negligence, the RLC only requires defense and indemnity from suits by Offshore Marine's employees or third persons, not by shipyard workers like Mr. Chouest. Therefore, Offshore Marine respectfully moves this Honorable Court to grant summary judgment in its favor, dismissing Superior Shipyard's Counter-Claim and Third-Party Demand as to Offshore Marine.

Respectfully submitted,

**DUNCAN, COURINGTON & RYDBERG, L.L.C.**

/s/ _____
**KELLEY A. SEVIN T.A. (#25871)**
**HARRY E. MORSE (#31515)**
400 Poydras Street, Suite 1200
New Orleans, LA 70130
Telephone: (504) 524-5566
Facsimile: (504) 524-9003
E-Mail: ksevin@duncour.com
E-Mail: hmorse@duncour.com
Attorneys for defendant and third-party plaintiff,
Offshore Marine, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been electronically filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record, this 16TH day of March, 2010.

/s/ _____